IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM R. GRENDER,

                                                        OPINION AND ORDER

          Plaintiff,

                                                            19-cv-403-bbc

    v.

MARY MCCULLICK, LEBBEUS BROWN,
JOSHUA FEDIE and MICHAEL ROTH,

          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff William Grender, who is incarcerated at the Wisconsin Secure Program Facility, is proceeding on Eighth Amendment claims that defendants Mary McCullick, Lebbeus Brown and Joshua Fedie refused to give him his medically-prescribed pillow for his gastroesophageal reflux disease and ice packs for his back pain, and that defendant Michael Roth refused to get him medical attention after he vomited blood. (I have revised the caption to reflect the correct spellings of defendants' names.) Before the court are defendants' motion for summary judgment for plaintiff's failure to exhaust his administrative remedies with respect to his claim against Roth and his ice pack claim against the other defendants, dkt. #21; plaintiff's motion to stay a ruling on that motion (plaintiff provides no reason for his request), dkt. #30; plaintiff's motion for a preliminary injunction in which he asks the court to transfer him to another institution because of conduct unrelated to the claims on which he is proceeding, dkt. #42; and plaintiff's motion for court assistance in recruiting counsel, dkt. #44.

For the reasons below, I am granting defendants' motion for summary judgment and dismissing without prejudice plaintiff's claim against defendant Roth and his claim that defendants McCullick, Brown and Fedie denied him ice packs. I am denying plaintiff's motion to stay because he has not provided any reason for the stay or explained why he requested one. Plaintiff's motions for a preliminary injunction and court assistance in recruiting counsel also will be denied.

OPINION

A. Exhaustion

Under the Prison Litigation Reform Act, prisoners must exhaust all available administrative remedies before filing a lawsuit in federal court about prison conditions. 42 U.S.C. § 1997e(a). To comply with 1997e(a), a prisoner must take each step within the administrative process, Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing an initial grievance, Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, Burrell v. Powers, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025. To exhaust administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code ch. DOC 310. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. Woodford v. Ngo, 548 U.S. 81, 88-89 (2006). Failure to exhaust administrative remedies under §

2

1997e(a) is an affirmative defense that must be proven by the defendants. Davis v. Mason, 881 F.3d 982, 985 (7th Cir. 2018).

Under the inmate complaint review system set forth in the administrative code, an inmate must file a complaint with the inmate complaint examiner within 14 days after the event giving rise to the complaint. Wis. Admin. Code § DOC 310.07(2). The inmate complaint examiner must collect and date stamp the complaint and give written notice to the inmate within 10 days of collecting the complaint to notify the inmate that the complaint has been received. § DOC 310.10(1) and (4). The inmate complaint examiner then must decide to return, accept or reject the inmate complaint. § DOC 310.10(2), (5) and (6).

Plaintiff alleges that defendants McCullick, Brown and Fedie failed to provide him an extra pillow or ice packs in late January and early February 2019, even though they knew that plaintiff's physician had prescribed these items to alleviate his pain and other symptoms. Plaintiff also alleges that defendant Roth failed to get plaintiff medical attention after Roth observed plaintiff vomiting blood on February 5, 2019. Defendants have presented evidence showing that plaintiff filed only three inmate complaints potentially related to the issues in this case but all of them concerned the denial of an extra pillow. Dkt. #23-2 (Feb. 10, 2019 complaint no. WSPF-2019-2790 about not receiving extra pillows ordered on Jan. 31); dkt. #23-3 (Feb. 14, 2019 complaint no. WSPF-2019-3271 about not receiving extra pillows in clinical observation from Feb. 4-6); dkt. #23-4 (Feb. 20, 2019 complaint no. WSPF-2019-3771 about being denied an extra pillow on Feb. 5). Therefore,

defendants seek dismissal of plaintiff's ice pack claim and his claim against Roth on exhaustion grounds.

Because plaintiff did not respond to defendants' argument that he failed to exhaust his claim regarding the ice packs and there is no record of his doing so, that claim will be dismissed. With respect to his claim against defendant Roth, plaintiff contends that he filed an inmate complaint about Roth's alleged refusal to get him medical attention. Although defendants found no record of such a complaint in the inmate complaint tracking system, dkt. #23 at ¶¶ 5 and 16, plaintiff attaches a "carbon copy" of the complaint that he avers he placed in his unit's mailbox for the inmate complaint examiner on the evening of February 6, 2019. Dkt. #29. Plaintiff's copy of the complaint does not have a receipt stamp or inmate complaint number on it. Plaintiff also avers that he never received a response to the complaint and that it was not returned to him during a mail pass.

As defendants point out, because the Department of Corrections uses a mandatory receipt system for inmate complaints, plaintiff cannot demonstrate an issue of fact with respect to exhaustion by merely asserting that he submitted a grievance for which there is no record and for which he did not receive a receipt. Lockett v. Bonson, 937 F.3d 1016, 1026-27 (7th Cir. 2019) ("Mr. Lockett was obliged to regard the absence of receipt as a red flag; he should have undertaken, through the complaint procedure, an inquiry to ascertain why he had not received this important document. Having failed to make that inquiry, he may not now counter evidence that the prison did not receive his administrative appeal with a bald assertion of a timely filing."). The "red flag" in Lockett was the lack of a receipt for

the appeal within five days. Id. at 1026-27 & n.23 (citing Wis. Admin Code § 310.13(4)). The "red flag" for plaintiff was his failure to receive a receipt for his inmate complaint within 10 days, as required under Wis. Admin. Code § 310.10(4).

After the briefing was completed on defendants' motion for summary judgment, plaintiff filed a surreply in which he argues that he did not have to explain the physical injury that he suffered (in this case, vomiting blood) as a result of not receiving extra pillows in order to exhaust his claim against Roth. However, plaintiff's February 2019 inmate complaints discuss the failure of various staff to provide him extra pillows. Nothing in those complaints would alert Roth or prison administrators about plaintiff's concerns about not receiving medical attention for vomiting blood. Even in the unlikely event that one could assume that not having an extra pillow could cause plaintiff to vomit blood, there is no suggestion that anyone failed to get him medical attention when he did so on February 5, 2019.

Accordingly, I am dismissing without prejudice plaintiff's claim against defendant Roth and his ice pack claim against defendants McCullick, Brown and Fedie for his failure to exhaust his administrative remedies with respect to those claims. Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). Plaintiff will continue to proceed on his claim that defendants McCullick, Brown and Fedie refused to give him his medically-prescribed extra pillow for his gastroesophageal reflux disease.

Defendants contend without developing an argument that plaintiff's extra pillow claim should be limited to the time frame of February 10-12, 2019. (Plaintiff finally received an extra pillow on February 12, 2019.) However, plaintiff alleges in his complaint that defendants McCullick, Brown and Fedie denied him an extra pillow on multiple occasions after the extra pillow was prescribed on January 31, 2019. Although defendants seem to be arguing that plaintiff's February 10 inmate complaint (no. WSPF-2019-2790) is limited to plaintiff's failure to receive an extra pillow on that day, plaintiff clearly stated in that complaint that he had not yet received the extra pillow that was prescribed on January 31 and that McCullick, Brown and Fedie had failed to respond to his requests for one. Therefore, plaintiff has exhausted his claim that these defendants denied him an extra pillow between January 31 and February 12, 2019. Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing.").

However, defendants are correct that I did not allow plaintiff to proceed on a claim regarding his failure to receive extra pillows while he was on clinical observation status from February 4-6, 2019, because the psychological services unit does not allow such items in observation status. I found that plaintiff's allegations suggested that staff (who did not include McCullick, Brown and Fedie) were following standard policy and attempting to protect plaintiff from harming himself and were not acting with deliberate indifference to plaintiff's serious medical need.

## B. Motion for Preliminary Injunction

Plaintiff has filed a motion for preliminary injunctive relief, requesting that the court order his transfer to another institution because unidentified prison staff are tampering with his food and mail and assisting other inmates in their plans to assault him. A preliminary injunction is "an extraordinary and drastic remedy" that should be granted only when the movant carries the burden of persuasion by a "clear showing." Boucher v. School Bd. of Greenfield, 134 F.3d 821, 823 (7th Cir. 1998) (citations omitted). To prevail on a motion for a preliminary injunction, plaintiff must show: (1) a likelihood of success on the merits of his case; (2) a lack of an adequate remedy at law; and (3) an irreparable harm that will result if the injunction is not granted. Lambert v. Buss, 498 F.3d 446, 451 (7th Cir. 2007).

I am denying plaintiff's motion for two reasons. First, plaintiff's motion is procedurally defective because it fails to comply with this court's procedure for obtaining preliminary injunctive relief. Under these procedures, a plaintiff must file and serve proposed findings of fact that support his claims, along with any evidence that supports those proposed findings. Although plaintiff has proposed some general findings of fact about being harassed or targeted by prison staff, they are not detailed enough to support his claims. He also has not submitted sufficient evidence to support his claims.

Second, even if plaintiff's motion were not facially flawed, I would deny it on the merits. The conduct about which plaintiff is complaining is not included in his current claims, which relate to defendants' failure to provide him with extra pillows. Plaintiff cannot obtain preliminary injunctive relief for a claim not included in his complaint. Devose v.

Herrington, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."); Neuroscience, Inc. v. Forrest, No. 12-cv-813-bbc, 2013 WL 6331348, at *1 (W.D. Wis. Dec. 5, 2013) (denying motion for preliminary injunction because it raised issues outside scope of complaint); Dudgeon v. Fiorello, 06-C-563-C, 2007 WL 5517460 (W.D. Wis. Jan. 31, 2007) (same); Williams v. Nelson, 04-C-774-C, 2005 WL 840358 (W.D. Wis. Apr. 1, 2005) (same). Any complaints that plaintiff has about his food, mail or threats from other inmates are unrelated to his claim that defendants denied him extra pillows and would have to be brought in a separate lawsuit. Accordingly, plaintiff is not entitled to emergency injunctive relief at this time.

### C. Motion for Court Assistance in Recruiting Counsel

A pro se litigant does not have a right to counsel in a civil case, Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014), but a district court has discretion to assist pro se litigants in finding lawyers to represent them. Pruitt v. Mote, 503 F.3d 647, 649 (7th Cir. 2007). A party who wants assistance from the court in recruiting counsel must meet several requirements. Santiago v. Walls, 599 F.3d 749, 760-61 (7th Cir. 2010). First, he must show that he is unable to afford to hire his own lawyer. 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). Second, he must show that he made reasonable efforts on his own to find a lawyer to represent him. Jackson v. County of McLean, 953 F.2d 1070 (7th Cir. 1992). Finally, he must show that

the legal and factual difficulty of the case exceeds his ability to prosecute it. Pruitt, 503 F.3d at 654-55.

Plaintiff has met the first requirement because the court has determined that he is indigent. He also has satisfied the second requirement by filing copies of letters from three lawyers who denied his request for representation. However, I am denying plaintiff's motion because he has not shown that the case is too difficult for him to litigate on his own.

Plaintiff says that his imprisonment greatly limits his ability to litigate; the issues in his case are complex and will require significant research; he has limited access to the law library and little knowledge of the law; and he needs the assistance of a lawyer to present evidence and cross examine witnesses. However, the question is not simply whether a lawyer might do a better job. Court assistance in recruiting counsel is appropriate only when the plaintiff demonstrates that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. Pruitt, 503 F.3d at 654-55. At this early stage, I have no basis for concluding that plaintiff's case is so complex or that his skills are so poor that I should recruit a lawyer for him at this time. In fact, plaintiff's complaint and other filings are legible, coherent and identify relevant facts and legal standards.

Although plaintiff is concerned with his limited experience and access to legal materials, his primary task at this stage is telling the court what happened, when, where and who was involved. His efforts should focus on obtaining the evidence he needs to prove his claims, including collecting medical and other prison records, declarations from witnesses

and any other relevant documents or evidence. Following the preliminary pretrial conference in this case, the court issued an order that provides extensive information about how to conduct discovery and obtain evidence. Dkt. #20. Plaintiff should review that order and, if he is confused about how to obtain evidence, he should write a letter to defendants' counsel explaining precisely which documents or other evidence he wants to obtain. If he is still confused after conferring with defendant's counsel, he should contact the court for help. In deciding any future motion for summary judgment, the court will apply the appropriate law to the facts, even if plaintiff cannot find and provide the law on his own or does not understand how the law applies to his facts.

Plaintiff should know that the court would recruit counsel for every pro se plaintiff who asked for one if there were enough volunteer attorneys to take on such representation. The fact is that there are not. Each year more than 300 lawsuits are filed in this district by pro se plaintiffs, most of whom are in state custody. Only about 30 lawyers have the time, willingness and expertise in civil rights litigation to accept appointments and not all of them volunteer to handle one new case a year. Between 2016 and 2017, for example, the court was able to find only 17 volunteer lawyers to represent pro se litigants. In the past year, the court has had little success in finding counsel for a number of more complex cases, although the effort to do so is continuing. In the meantime, the claims of these litigants have been delayed significantly. Although the court is continually trying new approaches to recruiting counsel, there continue be many more litigants who want the help of counsel than there are counsel who can fill that need. For this reason, the court must carefully consider each

plaintiff's abilities and the complexities of the claim in determining whether to recruit counsel in any particular case.

Accordingly, I am denying plaintiff's motion without prejudice. If plaintiff's case survives summary judgment and he can show that he is unable to represent himself at trial, plaintiff is free to renew his motion at that time.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment for plaintiff William Grender's failure to exhaust his administrative remedies, dkt. #21, is GRANTED. Plaintiff's claim against defendant Michael Roth and plaintiff's claim that defendants Mary McCullick, Lebbeus Brown and Joshua Fedie refused to give plaintiff ice packs for his back pain are DISMISSED without prejudice.

2. Plaintiff's motion for a stay, dkt. #30; motion for a preliminary injunction, dkt. #42; and motion for court assistance in recruiting counsel, dkt. #44, are DENIED.

Entered this 7th day of February, 2020.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge