IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM R. GRENDER,

                                                            OPINION AND ORDER

              Plaintiff,

                                                          19-cv-403-bbc

    v.

MARY MCCULLICK, LEBBEUS BROWN
AND JOSHUA FEDIE,

             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff William Grender, who is incarcerated at the Wisconsin Secure Program Facility, is proceeding on Eighth Amendment claims that defendants Mary McCullick, Lebbeus Brown and Joshua Fedie refused to give him his medically-prescribed pillow for his gastroesophageal reflux disease between January 31 and February 12, 2019. Before the court are the parties' cross motions for summary judgment. Dkt. ##51, 64. For the reasons below, I am granting defendants' motion for summary judgment, denying plaintiff's motion for summary judgment and dismissing this case.

From the parties' proposed findings of fact and the evidence in the record, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

Plaintiff William Grender is incarcerated at the Wisconsin Secure Program Facility where defendant Lebbeus Brown is a unit manager, Mary McCullick is a correctional sergeant and Joshua Fedie is a correctional officer. Plaintiff has gastroesophageal reflux

1

disease (GERD) for which he takes omeprazole and has been treated at La Crosse Gunderson Hospital and Boscobel Gunderson Hospital.

On January 31, 2019, Sandra McCardle saw plaintiff for symptoms of GERD, including vomiting and choking. She prescribed an extra pillow to elevate his head to help prevent him from vomiting. Extra pillows are distributed by housing unit and not health services staff.

Plaintiff's special handling summary shows that he had a "medical need" for an extra pillow from January 31 to April 30, 2019, but the summary does not identify the reason for the pillow. An inmate's active medical restrictions are listed in the Wisconsin Integrated Corrections System, which is known as WICS.

Plaintiff did not receive his extra pillow for 13 days, during which time he alleges that he could not sleep because of pain and vomiting. (The parties dispute whether plaintiff asked defendants Fedie, McCullick and Brown for his extra pillow. Plaintiff says the following occurred:

- He asked McCullick for his medically-prescribed extra pillow on January 31, 2019, but she refused and said "not my problem. Should've gotten it on first shift."

- On January 31, 2019, he submitted an interview request to defendant Brown, asking him to speak with unit staff about giving him his extra pillow, but Brown never responded.

- On February 2, 2019, he asked Fedie why he was being denied his extra pillow and Fedie shrugged and walked away.

- He continued to ask defendants for his extra pillow and showed them his medical restriction sheet, but they did not give him the extra pillow.

2

Defendants dispute these allegations, saying that they do not remember plaintiff's asking for an extra pillow before February 12, were not aware that plaintiff had severe symptoms of acid reflux and did not know why he needed an extra pillow.)

Plaintiff submitted a health service request on February 3, 2019, stating that he had asked Brown, McCullick and Fedie for his medically-prescribed extra pillow but they ignored his requests. On February 4, a health services staff member responded that he or she had called the unit and was informed that plaintiff would receive the extra pillow. On February 8, 2019, plaintiff submitted another health service request form, stating that he had not yet received his extra pillow. Health services staff responded that if the restriction was active, it would be in WICS and that his unit, and not the health services unit, issues the pillows to inmates.

On February 10, 2019, plaintiff filed an inmate complaint about not having received his extra pillow, and the complaint was affirmed. Defendant Brown brought plaintiff an extra pillow on February 12, 2019.

At all times relevant to his complaint, plaintiff had a pillow, two sheets, two blankets and shoes in his cell. Although plaintiff did not recall if he attempted to prop his head up using his pillow and his second blanket or other property, he probably used something such as an extra blanket to prop up his head at some point. A standard-issue folded blanket is at least as thick and supportive as a standard-issue second pillow, and inmates have used folded blankets to elevate their heads. Plaintiff did not use his emergency intercom to request an

extra pillow. (Plaintiff says the he could not ask for the pillow over the intercom and would have had to talk with the sergeant face-to-face.)

OPINION

Plaintiff alleges that from January 31 to February 12, 2019, defendants McCullick, Brown and Fedie denied him an extra pillow that was prescribed to him for GERD symptoms. (Plaintiff was not allowed to proceed on a claim regarding his failure to receive extra pillows while he was on clinical observation status from February 4-6, 2019, because the psychological services unit does not allow such items in observation status.)

A prison official may violate the Eighth Amendment if he or she is "deliberately indifferent" to a "serious medical need" or a "significant risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 828 (1994); Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). At least for purposes of summary judgment, defendants recognize that symptoms of GERD or heartburn can pose a serious medical need, depending on the circumstances. In this case, plaintiff alleges that he suffered painful and uncomfortable symptoms, including vomiting, that posed him a significant risk of harm on a nightly basis. Therefore, the question is whether plaintiff has submitted enough evidence from which a reasonable jury could conclude that any of the defendants acted with "deliberate indifference" toward his alleged significant risk of harm. Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012).

"Deliberate indifference" means that the officials were aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take

reasonable measures to address it. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). To be considered "deliberately indifferent," an official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).

      The exact details of plaintiff's communications with defendants are disputed, but plaintiff has presented evidence that he told defendants that he needed his "medically-prescribed" extra pillow. However, a reasonable jury could not infer from plaintiff's version of the events that any of the defendants knew that plaintiff had GERD or would face a substantial risk of serious harm from his GERD symptoms if they failed to provide him an extra pillow. For example, plaintiff has not produced any evidence that plaintiff told defendants that he has GERD or that he was in pain or vomiting and that the pillow would prevent such symptoms. Plaintiff's general statements about needing his medically-prescribed extra pillow, without more, are not sufficient to put defendants on notice that he faced any risk of harm. Although plaintiff points out that his medical need for an extra pillow was documented in WICS and that health services staff wrote on a response to his health services request that they had called his unit to insure that he received the extra pillow, neither document identifies the medical reason for the extra pillow or what would happen if plaintiff did not receive it.

Moreover, as defendants point out, it was common knowledge that plaintiff had the ability to use a folded blanket or other property to elevate his head.  Although having to use an alternative means to elevate one's head may not be as comfortable as an extra pillow, it does not rise to the level of an Eighth Amendment violation.  McMichael v. Caruso, 2007 WL 80880, at *2 and 6 (W.D. Wis. Jan. 8, 2007) (finding that even if inconvenient or less comfortable, medically-necessary elevation of head for GERD could be accomplished by positioning pillow over clothing).  At most, a reasonable jury would conclude from plaintiff's version of events that defendants acted with negligence or gross negligence in ignoring his requests for an extra pillow.  Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016), as amended (Aug. 25, 2016) ("Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a [deliberate indifference] claim.").

For the similar reasons, defendants are entitled to qualified immunity, which protects government officials from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Campbell v. Kallas, 936 F.3d 536, 545 (7th Cir. 2019) (quoting Estate of Clark v. Walker, 865 F.3d 544, 549-50 (7th Cir. 2017)).  The inquiry is two-fold:  "(1) whether the facts, taken in the light most favorable to the plaintiff[], show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation."  Gonzales v. City of Elgin, 578 F.3d 526, 540 (7th Cir. 2009).  Whether a right was "clearly established" is grounded in the notion of

fair notice. Thus "[a] rule is too general if the lawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" District of Columbia v. Wesby, __ U.S. __, 138 S. Ct. 577 (2018) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)). The Court of Appeals for the Seventh Circuit recently reminded courts that "clearly established law cannot be framed at a 'high level of generality.'" Campbell, 936 F.3d at 545 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). Rather, "[e]xisting caselaw must dictate the resolution of the parties' dispute," meaning that the "precedent must have placed the . . . constitutional question beyond debate." Id. Accordingly, courts must "[f]rame the constitutional right in terms granular enough to provide fair notice." Id.

Although it is well established that prison officials cannot ignore a significant risk of serious harm to an inmate, plaintiff's version of events does not support a finding that any of the defendants had subjective knowledge that plaintiff faced such a risk if they did not provide him with an extra pillow. Plaintiff has not identified any cases that would support a deliberate indifference claim based on prison staff's failure to provide an inmate an extra pillow under circumstances similar to those in this case. This also is not "one of the rare cases . . . where the state official's alleged conduct is so egregious that it is an obvious violation of a constitutional right." Leiser v. Kloth, 933 F.3d 696, 702 (7th Cir. 2019). Therefore, defendants are entitled to qualified immunity with respect to plaintiff's claims for damages against them.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, dkt. #64, is GRANTED and plaintiff's motion for summary judgment, dkt. #51, is DENIED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 31st day of July, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge